## MATTEIS et al. v. UNITED STATES.
## SCHAFFER v. SAME.
### Nos. 4684, 4690.

Circuit Court of Appeals, Seventh Circuit.
April 14, 1932.

1000

Harry J. Meyers and Charles R. Brown, both of Chicago, Ill. (Joseph R. Roach, of Chicago, Ill., of counsel), for appellants Matteis and another.

Lyman W. Sherwood, of Chicago, Ill., for appellant Schaffer.

George E. Q. Johnson, U. S. Atty., and Edward A. Fisher, Asst. U. S. Atty., both of Chicago, Ill.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeals are from a judgment of conviction of appellants under an indictment of four counts charging them and one Seifert with (1) possession of liquor, (2) selling it, (3) transporting it, and (4) conspiracy to do those things, all in contravention of the National Prohibition Law.

The trial was by the court, and before its commencement Seifert was dismissed from the case. Each defendant was found guilty on all counts, and each was sentenced on count 1 to $500 fine, on counts 2 and 3 to four and one-half years' imprisonment, and on count 4 to two years' imprisonment and $1,000 fine, the terms of imprisonment to run concurrently.

Incriminating facts of which there was substantial evidence are: Seifert and wife ran a restaurant or roadhouse, and in February, 1931, Matteis with three unidentified men came there and said to the Seiferts that they were the syndicate in charge of the alcohol business in that territory and asked the Seiferts to take liquor and alcohol from them. Mrs. Seifert said they did not want it. Matteis said they would see her the next Monday. He then returned with three men and asked her to take liquor, saying he had protection and they need not be afraid. Again there was refusal. He called a number of Mondays thereafter, with the same result. Early in April he came with Schaffer and others, and Schaffer said they had been coming there for two months, and that

the Seiferts should take liquor and alcohol from them, and wanted an answer. She again declined, saying they had no use for it. Schaffer smelled the glasses standing there, and then said, "Let's go, we are going to bring the stuff anyhow." Two days later Schaffer came there with two sacks containing five one-gallon cans of alcohol and ten pints of whisky, and left them on the kitchen floor. She told him to take it out, but he left it, saying he would see her next Monday. Seifert placed them in a garage in the rear of the restaurant, but they never opened the sacks. Schaffer left in an automobile, the license number of which she asked Seifert to obtain, but he failed to do so.

On the following Monday Matteis, with an unidentified man, called and said he had come to collect for the stuff. She said she did not want it and would not pay. He continued to call on Mondays until April 27.

On that day two federal officers were at the place and were shown the sacks of liquor. They opened the sacks and tasted the liquor. Assuming that on this Monday the collectors would again call, it was arranged that the officers should pose as new proprietors who had bought the place. They donned aprons and were playing cards when Matteis and Accardo arrived. The officers were introduced as the new proprietors, who said they had taken over the liquor as a responsibility, and Matteis told them that they handled all of the liquor and whisky in the territory and would give protection against police officers, and gave the price of whisky and alcohol. He said, "You can take the alcohol and whisky that is here," stating the price was $70. On inquiry Matteis wrote on a paper the phone numbers to be called for obtaining more liquor. In speaking of the quality of the liquor Accardo said the stuff came right from Canada and was 100 per cent.

The officers said they could not then spare all of the money, and offered and paid on account to Matteis $20 in marked bills, saying they would pay the rest later.

Thereupon the two were arrested and searched. From Matteis a number of papers were taken, one of them a list of 92 alphabetically arranged names, largely of roadhouses, clubs, and the like, with amounts opposite the names totaling $8,247.75; one of the entries being the name of this roadhouse opposite the amount of $70. Both men had loaded guns, and Matteis had a roll of bills containing $631, which included the marked bills which were retaken by the officers.

Schaffer was not apprehended until months after the arrest of the other two. Two days after the arrest of Matteis and Accardo, Schaffer drove out and talked with Mrs. Seifert, whose husband had also been arrested. As he was leaving the premises, she asked her son to take the license number of the car. He wrote it on a paper and handed it to her. She later gave it to one of the prohibition officers, and on investigation a license bearing that number was found to have been issued in Schaffer's name for an Oldsmobile sedan. Schaffer was later apprehended, and on the trial he was identified by Mrs. Seifert as the person who had called at the place as stated, and who left the sacks of liquor there.

All of these facts, save what occurred on April 27, were brought out solely by the testimony of Mrs. Seifert. No evidence was offered on behalf of Matteis and Accardo. Schaffer testified, denying all the evidence that had been given concerning him, and denying that he had ever been at the Seifert place.

For Matteis and Accardo it is claimed that the evidence fails to show their guilt under any of the counts. For Schaffer the same claim is made, and, additionally, that there was error in admitting in evidence, in the absence of the paper itself, testimony of the contents of the paper whereon the car license number had been written.

As to the sale count, unless the evidence discloses that the transactions of April 27 constituted a sale of the liquor to the officers, there is no proof sufficient to warrant conviction thereunder. Surely up to that date Mrs. Seifert's testimony does not tend to show a sale. On the contrary, she stated over and over again that they persistently declined to buy or accept the liquor. In order to constitute a sale there must be a purchaser as well as a seller; likewise, there must be a meeting of minds upon a sale as between seller and buyer. It follows that as between appellants and the Seiferts there was no sale.

■ Was there a sale on April 27 to the officers? Did they intend to buy this liquor? Surely not; they intended merely to pretend they had bought it from the Seiferts, and had assumed the payment. They paid the marked money, not with the remotest intention of becoming purchasers of the stuff, but with the purpose of taking back the marked bills, and taking away the liquor without becoming its purchasers—and this they did. While in this there was nothing reprehensible on the officers' part, it did not con-

stitute a purchase by them and was not in fact a sale. The case is decidedly different from those where officers actually purchase liquor and drink it or take it away for evidence. Indeed, the officers had here, prior to paying the money, actually taken this liquor for the purpose of obtaining the evidence of unlawful sale thereby and opened and tasted it, after which it did not pass back to the appellants or any of them.

■ As to the transportation and possession counts, the actual transportation as shown by the evidence was the conveying of the liquor to the Seifert place by Schaffer early in April in an automobile; and the possession was such possession as Schaffer had while so transporting it. As to Schaffer, there was substantial evidence that he transported and possessed the liquor. As to Matteis, there was substantial evidence to indicate that he had participated with Schaffer in these acts by advising, aiding, and abetting Schaffer in their commission. This is apparent from the facts stated above respecting Matteis' participation prior to the actual bringing of the liquor to the Seifert place. He appears from the evidence to have been quite the master mind in this transaction and in this sort of business in that vicinity, and his responsibility for the possession and the transportation by Schaffer was sufficiently shown. Accardo was not shown by the evidence to have had any connection whatever with these transactions prior to April 27, which, from the record, was the first day that he appears upon the scene. While it is quite likely he had had prior relation, this cannot be assumed in the absence of evidence to show it. He therefore could not be held for the substantive crime of transportation and possession actually committed several weeks prior to the time that any evidence connects him with these matters. It follows that his conviction upon these two counts cannot stand.

■ As to the conspiracy count, there was surely substantial evidence to indicate that Matteis and Schaffer were in a scheme to compel the Seiferts to take liquor from them for a considerable time prior to the time it was brought to their place. Their repeated acts before it was actually taken there clearly indicate their preconcerted plan and show them to have unlawfully conspired together to violate the National Prohibition Act. The same preconcert, while not so definitely appearing as to Accardo, is nevertheless fairly shown by his acts and words on April 27. The evidence of what he then said and did indicates that he had more than a mere pass-

ing interest in the subject-matter of that day's dealings. He evidently well understood the unlawful transaction in which he was participating. He spoke glibly of the high quality of the liquor they would deliver and of its Canadian origin, and was a participant in the conversation wherein he or Matteis, or both, held out as an inducement the police protection which was accorded to them and their customers in the carrying on of their unlawful traffic; and he, as well as Matteis, was well armed to protect them in their unlawful enterprise. Whether he first entered the conspiracy on that day or days before, the evidence showed none the less his conspiracy. The conviction of all the appellants on this count must be sustained.

As to Matteis and Schaffer the judgment upon the first, third, and fourth counts of the indictment is affirmed, and upon the second (sale) count of the indictment the judgment is reversed. As to Accardo the judgment upon the fourth (conspiracy) count of the indictment is affirmed, and upon the first, second, and third counts of the indictment the judgment is reversed.